IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY

| | |
|---|---|
| CHRISTOPHER W. STONEMAN ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.  4:21-cv-00061 |
| vs. ) | |
| ) | |
| NIM TRANSPORTATION, LLC ) | |
| And JAMES J. AJELLO ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION IN LIMINE**

**1. Plaintiff Expert Scott Turner's Opinions Meet the Standard for Admission of Expert Testimony pursuant to Fed. R. Evid. 702 and Should be Admitted as To Applicable Standards of Care for Commercial Truck Drivers**

Defendants appear to seek the wholesale exclusion of Plaintiff's expert Scott Turner's testimony based upon the dismissal of Plaintiff's negligent, hiring, retention, and supervision claims by the Court on April 24, 2022.  Defendants do not question the qualifications of Mr. Turner, only the relevancy of his opinions.   Even a cursory review of Mr. Turner's opinions as set forth in his report (Attached as **Exhibit A**) show that his opinions go far beyond those implicated in Plaintiff's claims of negligent hiring, supervision and retention.  They go to the standard of care applicable to Defendant employee/driver James Ajello.

Specifically, Defendants fail to understand and appreciate that much of Mr. Turner's testimony goes directly to the failings of Defendant's driver James Ajello, and not NIM Transportation itself.  Mr. Turner spends a great deal of time in his opinions and the presentation thereof explaining the applicable standard of care for a commercial truck driver, how those standards are established from an industry standpoint, and how Mr. Ajello failed to meet those standards of commercial motor vehicle operation.  As the Court can no doubt appreciate, operation

of a commercial motor vehicle is not the same as that of a normal automobile. A tractor trailer is significantly larger and more dangerous than an automobile, its stopping distances are different, and its safe operation takes considerably more training than an automobile and requires a separate and distinct license. It would be extremely helpful for a jury to understand and appreciate those differences and assistance that Mr. Turner's testimony can provide. Furthermore, Mr. Ajello's failure to meet the industry custom and practice and standard of care is relevant and meets the standards for expert testimony under Fed. R. Evid. 702, in that he possesses specialized knowledge that will help the jury understand the evidence and determine fact issues in this cause. Rule 702 provides:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The decision of <u>Stiefel v. Malone</u> United States District Court N.D. Alabama February 8, 2021 (Slip Opinion attached as **Exhibit B**) is instructive in analyzing the admission and scope of expert standard of care testimony in a commercial trucking case. The case involved the motions to strike expert testimony of commercial trucking regulatory and standard of care expert Whitney Morgan. The case also dealt with the admission of such testimony AFTER, the negligent hiring, training, supervision and entrustment claims had been dismissed. The District Court held:

> On the other hand, courts routinely view expert testimony regarding the standard of care applicable in a trucking accident case, and a driver's conduct in relation to that standard (including that the conduct breached the standard), not as an impermissible legal conclusion but, rather, as admissible if reliable and otherwise relevant. See, e.g., Ricker, 2006 WL 5157692, at *8 (permitting Whitney Morgan to offer Testimony regarding standard of care

> applicable in trucking accident case and reasons defendants' conduct fell short of that standard). Accordingly, Morgan's opinion Malone breached the applicable standard of care is admissible if reliable and otherwise relevant, considerations the undersigned addresses below.
>
> Additionally, Morgan's opinions Malone did not calculate his following distance properly and was following the pickup truck too closely are helpful and, therefore, relevant because the average lay person is not familiar with the operation of a commercial motor vehicle.

See, e.g., See *Key*, 2010 WL 11531270, at *5 (holding expert's testimony regarding relevant legal standard of care as applied to CMV driver's actions would be helpful to factfinder in deciding whether driver was negligent); *Lohr*, 2014 WL 2832192, at *2 (rejecting argument opinions of trucking safety expert were not beyond the ken of lay persons, reasoning "[a] tractor-trailer is a significantly larger and more dangerous vehicle than an automobile and ... a significantly different kind of vehicle from that driven by an ordinary juror"); Duling v. Domino's Pizza, LLC, 2015 WL 3407602, at *13-14 (N.D. Ga. Jan. 2015) (holding expert's testimony CMV driver's conduct violated CMV industry's standard of care would be helpful to jury because it concerned matters beyond the understanding of the average lay person).

*Hood v. Sellers*, 2018 WL 3429708, at *2 (M.D. Pa. July 16, 2018) (permitting expert to testify regarding standard of care applicable in trucking accident case and any breach thereof by defendants); *Martinez v. Cont'l Tire The Americas, LLC*, 2020 WL 5943691, at *4-5 (D.N.M. Oct. 7, 2020)(noting that "[g]enerally, an expert in a negligence action may opine on the standard of care and the breach of that standard" and holding expert testimony regarding standard of care applicable in trucking accident case would not encroach on court's duty to instruct jury on legal standards).

*See also Valyou v. Vannest*, 2016 WL 7664288, at *3 (D. Wyo. Sept. 19, 2016) (permitting expert to testify regarding standards and practices in commercial trucking industry, and to compare those standards and practices to defendant truck driver's conduct, because "a typical juror most likely does not have any significant knowledge and experience with the federal regulations surrounding the trucking industry"); *Martinez*, 2020 WL 5943691, at *5 (holding expert testimony regarding standard of care in maintaining and operating commercial vehicles would assist jury in specialized area with which they were unlikely to be familiar). *Stiefel v. Malone*, 4:18-CV-01540-SGC, 2021 WL 426217, at *13 (N.D. Ala. Feb. 8, 2021).

Plaintiff understands that Mr. Turner's opinions as they relate to negligence of NIM, Transportation, Inc. directly, is not relevant to the issues currently in the case. Absent Defendant opening the door to such testimony Plaintiff has no intention to seek such opinions from Mr. Turner. However, opinions that provide the history, context and development of the standard of care for a commercial truck driver, (e.g., state CDL driving manuals, federal regulations, and industry training, customs and practices) is highly relevant, and permissible. Furthermore, testimony that Mr. Ajello failed to meet that standard of care is also relevant and admissible.

2. **Plaintiff's Response to Defendants' Third Motion In Limine To Exclude Evidence/Testimony Regarding Plaintiff's Spoliation Letter Sent September 27, 2018, Should Not Deny Plaintiff The Opportunity To Admit Evidence Of The ECM Capability Of The Truck, Defendants' Knowledge Of The Capability To Record Accident Data, And The Notification By Plaintiff To Preserve It.**

Defendant seeks to limit or exclude evidence that Plaintiff sent a preservation letter regarding the ECM or black box data after the accident. In support of that position Defendant asserts that "such evidence /testimony could only be relevant if coupled in tandem with a claim of spoliation of evidence-which has neither been advanced nor can be advanced given the facts of the case." (Defendants' Motion in Limine pp 4 No. 3). In doing so Defendant misconstrues a separate

claim for spoliation of evidence, which has not been plead but also is not recognized under Missouri law, an adverse inference admission, and finally basic admission of evidence. Plaintiff concedes no separate claim for spoliation is at issue.

Under Missouri substantive law, spoliation is the intentional act of destruction or significant alteration of evidence. *Pisoni v. Steak 'N Shake Operations, Inc.*, 468 S.W.3d 922, 926 (Mo.App.E.D. 2015). Spoliation may also be the concealment or suppression of relevant evidence or the failure to determine whether certain evidence exists. *Id.* (citing *DeGraffenreid v. R.L. Hannah Trucking Co.*, 80 S.W.3d 866, 874, 878 (Mo.App.W.D. 2002)). To constitute spoliation, the destructive act must be intentional, indicating fraud, deceit, or bad faith. *Pisoni*, 468 S.W.3d at 926. The failure to adequately explain the evidence's destruction may give rise to an adverse inference. *Id.* In such cases, it may be shown by the movant that the alleged spoliator had a duty, or should have recognized a duty, to preserve the evidence. *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 718 (Mo.App.W.D. 2015); *Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 77-78 (Mo.App.W.D. 1995). Simple negligence is not sufficient to satisfy the mental-state element of spoliation. *DeGraffenreid*, 80 S.W.3d at 873. Thus, the burden is on the party seeking the application and the benefit of the spoliation doctrine to make a prima facie showing that the opponent destroyed the missing evidence under circumstances manifesting fraud, deceit, or bad faith. *Marmaduke v. CBL & Associates Mgmt., Inc.*, 521 S.W.3d 257, 269 (Mo.App.E.D. 2017).

With this burden in mind Plaintiff, does not intend to seek an adverse inference regarding Defendant's failure to preserve the ECM data after the collision. However, that should not deny Plaintiff the opportunity to inquire of Defendant about the existence of such ECM information, the failure of defendant to preserve the evidence, and the fact that Plaintiff notified Defendant to in

fact preserve the data. Such evidence is relevant in a cause in which the relative speeds of the vehicles is in dispute, the delta-V involved in the collision, and the actions of the drivers. Furthermore, it is necessary in any cross-examination of Defendants' reconstructionist Fred Semke, P.E.

> **3. Defendant's Fourth Motion in Limine should be denied in that the evidence at issue does not constitute a subsequent remedial measure under Federal Rule of Evidence 407.**

Defendants seek to exclude evidence of admissions by Defendant NIM Transportation, Inc. after the accident in response to the investigation NIM undertook regarding the cause of the collision. Specifically, the evidence does not constitute a subsequent remedial measure. The defendants did not change their policy, they did not institute a new policy or procedure, they simply found, based on an internal investigation, that their employee had followed an <u>existing</u> company policy. Specifically, the statements at issue contained in the accident investigation form filled out by NIM state:

> "The following policy in place for NIM Transportation and if followed would have prevented this accident. 6 to 8 seconds following distance will be maintained under normal driving conditions. Under adverse driving conditions, 10 seconds following distance will the maintained."

There is nothing about this statement that constitutes a subsequent remedial measure. It is a recognition and admission of the violation of an existing company policy. This is not the type of evidence that Fed. R. Evid. 407 was meant to address.

A subsequent remedial measure is a measure "that would have made an earlier injury or harm less likely to occur." <u>Fed. R. Evid.407</u>. <u>Rule 407</u> "requires exclusion of evidence of subsequent remedial measure ... when it is offered as proof of negligence or culpable conduct." *Jaeger v. Henningson, Durham & Richardson, Inc*, 714 F.2d 773, 776 (8th Cir. 1983)

This rule furthers the social policy of encouraging "tortfeasors to undertake corrective measures on potentially dangerous conditions without fear that subsequent remedial actions will be used as evidence that the tortfeasors' prior actions were negligent." *Kociemba v. G.D. Searle & Co.*, 683 F. Supp. 1579, 1580-81 (D. Minn. 1988). Rule 407 "permits such evidence, however, for other purposes, including ownership or control, existence of duty, feasibility of precautionary measures, if controverted, and impeachment." *Jaeger*, 714 F.2d at 776.

Defendant had a policy regarding safe driving distances. It is the standard of care expected of its drivers and it was violated by Mr. Ajello. They did not change a policy. They did not implement a corrective measure; they made a finding. The statement is an admission, it is also evidence of duty, and control. Plaintiff should be allowed to introduce this highly relevant evidence in this cause.

**EDELMAN & THOMPSON, L.L.C.**

By: */s/ James T. Thompson*
James T. Thompson MO #37245
Elizabeth L. VanErem MO #68812
3100 Broadway - Suite 1400
Kansas City, Missouri 64111
Tel: (816) 561-3400
Fax: (816) 561-1664
jamesthompson@etkclaw.com
evanerem@etkclaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May 2022, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sends notification of filing to all counsel of record.

David R. Buchanan
Taylor L. Connolly
Brown & James, PC
2345 Grand Blvd. – Suite 2100
Kansas City, MO 64108
**ATTORNEYS FOR DEFENDANTS**

Ross A. Bridges
Jack Fleming
VESSELL BRIDGES MURPHY LAW OFFICES
3901 S Providence, Suite D
Columbia, MO 65203
ross.bridges@vbmlaw.com
jack.fleming@vbmlaw.com
**ATTORNEYS FOR INTERVENOR**

 */s/ James T. Thompson*